**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **RENATA V. WILLIAMS,** | § | |
| | § | |
|    **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. V-06-73** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
|    **Defendant.** | § | |

**MEMORANDUM & ORDER**

Pending before the Court are Plaintiff Renata V. Willaims' ("Williams") Motion for Summary Judgment (Dkt. #13) and Defendant, Michael J. Astrue, the Commissioner of the Social Security Administration's ("Commissioner") Motion for Summary Judgment (Dkt. #14). After consideration of the motions, the briefs, the entire record and the applicable law, the Court is of the opinion that Williams' motion should be DENIED and the Commissioner's motion should be GRANTED.

**Factual and Procedural Background**

Williams filed this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner denying Neely's application for Disability Insurance Benefits ("DIB"). Williams was born on December 11, 1963.[1] At the time of her hearing before the Administrative Law Judge ("ALJ"), Neely was 41 years of age with a high school education and had completed nursing training.[2] Neely had been employed as a registered nurse.[3]

---

[1] Administrative Transcript ("Tr."), p. 57.

[2] Tr., pp. 109, 251.

[3] Tr., pp. 71-78.

Williams filed her application for DIB on August 25, 2003, alleging that she had been unable to work since June 19, 2002.[4] The claim was denied initially and on reconsideration, and a request for hearing was timely filed. On May 24, 2005, Williams appeared for and testified at a hearing before the ALJ.[5] Judith Harper ("VE") appeared and testified in the capacity of an impartial vocational expert.[6]

On July 25, 2005 the ALJ issued a decision denying entitlement to the benefits sought on the grounds that Williams retained residual functional capacity ("RFC") to perform work that exists in a significant number in the national economy.[7] Williams timely requested review by the Appeals Council. On May 9, 2006, the Appeals Council denied Williams' request for review on the grounds that there was no reason to conclude that the ALJ abused his discretion, there was an error of law, the decision was not supported by substantial evidence, there is a broad policy or procedural issue that might affect the public interest, or there is new material evidence that is contrary to the weight of evidence previously of record.[8]

## Standard of Review and Applicable Law

The Court's review of the Commissioner's final decision to deny disability benefits is limited to two issues: (1) whether substantial record evidence supports the decision, and (2) whether proper legal standards were used to evaluate the evidence. *See Waters v. Barnhart*, 276

---

[4] Tr., pp. 57-59.  Williams apparently filed a "protective" application on January 22, 2003. Tr., p. 56.

[5] Tr., pp. 249-63.

[6] Tr., pp. 263-71.

[7] Tr, pp. 16-23.

[8] Tr., p. 4-6.

F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *McQueen v. Apfel*, 168 F.3d 152, 157 n. 2 (5th Cir. 1999)).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive and this Court must affirm. The widely accepted definition of "substantial evidence" is more than a mere scintilla, but less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Carey*, 230 F.3d at 135. In applying this standard, the court is to review the entire record, but it may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. *Brown*, 192 F.3d at 496. Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court reviews the legal standards applied by the Commissioner de novo.

To claim entitlement to disability benefits, a claimant must show that he was disabled on or before the last day of his insured status. *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that the

Commissioner should evaluate disability claims according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;
>
> (2) a claimant will not be found to be disabled unless he has a "severe impairment;"
>
> (3) a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors;
>
> (4) a claimant who is capable of performing work he has done in the past must be found "not disabled;" and
>
> (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as age, education, past work experience, and residual functioning capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520(b)-(f)*; see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving that he is unable to engage in substantial gainful activity within the meaning of the Act. *See Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991) (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)). The claimant must show that he suffers from a mental or physical impairment that not only renders him unable to perform his previous work, but, given his age, education, and work experience, prevents him from engaging in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980) (quoting *Rhynes v. Califano*, 586 F.2d 388, 389-90 (5th Cir. 1978)). However, if the claimant can show that he can no longer perform his previous job, the burden then shifts to the Commissioner to show that

4

there exists some other form of substantial gainful employment that the claimant can perform. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980); *Johnson*, 612 F.2d at 997. By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth. *See Brown*, 192 F.3d at 498; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)). The analysis stops at any point in the five step process upon a finding that the claimant is or is not disabled. *See Greenspan*, 38 F.3d at 236.

## Discussion

In the unfavorable decision, the ALJ proceeded to follow the five step process outlined in the regulations. At the first step, the ALJ found that Williams had not engaged in substantial gainful activity since June 19, 2002. At step two, the ALJ determined that Williams had impairments (i.e., obstructive sleep apnea with hypersomnolence, non-insulin dependant diabetes, morbid obesity, low back pain with degenerative disc disease and anxiety disorder) that constitute severe impairments significantly limiting mental or physical ability to do basic work activities. At the third step, the ALJ determined that Williams' severe impairments do not meet or medically equal one of the listed impairments in C.F.R. Pt. 404, Subpart P, Regulation No. 4. At step four, the ALJ determined that Williams' past relevant work is not within the purview of her current residual functional capacity. At step five, the ALJ determined that Williams is capable of performing work that exists in substantial numbers in the national economy.[9]

Williams objects to the ALJ's findings on the grounds that (1) the ALJ failed to properly evaluate Williams' failure to follow prescribed treatment pursuant to Social Security Ruling

---

[9] Tr., p. 22-23.

("SSR") 02-1p; and (2) the ALJ failed to consider any non-exertional limitations associated with Williams' severe impairments, namely, sleep apnea, diabetes, hydradenitis and morbid obesity. The Commissioner maintains that the ALJ's decision is supported by substantial evidence and comports with relevant legal standards.

A. **Failure of the ALJ to Properly Evaluate Williams' Failure to Follow Prescribed Treatment Pursuant to Social Security Ruling 02-1p.**

Williams claims that the ALJ failed to properly apply the rules announced in Social Security Ruling 02-1p, which govern disability determinations involving obesity. Specifically, Williams claims that (1) the ALJ "used [Williams'] obesity to deny her benefits" because of Williams' failure to follow prescribed treatment, namely, gastric surgery; and (2) the ALJ failed to consider that Williams' obesity complicated her other illnesses. In support of her first ground, Williams directs the Court to a portion of SSR 02-1p which indicates that a denial of benefits predicated on a failure to follow a prescribed treatment is only permissible when: (1) the individual has an impairment(s) that meets the definition of disability, including the duration requirement; (2) a treating source has prescribed treatment that is clearly expected to restore the ability to engage in substantial gainful activity; and (3) the evidence shows that the individual has failed to follow prescribed treatment without a good reason. SSR 02-1p, 2000 WL 628049, *9.

SSR 01-1p provides that its purpose is to "provide guidance on [Social Security Administration] policy concerning the evaluation of obesity in disability claims . . . ." 2000 WL 628049, *1. The SSR states that obesity should be considered when determining: (1) whether an individual has a medically determinable impairment; (2) whether an individual's impairment is severe; (3) whether an individual's impairment meets or equals the requirements of a listed

6

impairment in the listings; and (4) whether an individual's impairment prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy. *Id.* at *3. According to the ruling, a finding of disability may be predicated on obesity if "the obesity results in a finding that the individual is disabled based on his or her residual functional capacity. . ." while considering coexisting medical conditions. *Id.* at *4. Lastly, a denial of benefits may be based upon the failure to follow prescribed treatment. *Id*. at *9. However, the ruling explicitly provides that this basis should rarely be relied upon. *Id.* at *9.

After examining the ALJ's decision, it is clear that his finding that Williams was not "disabled" under the Social Security Act was based upon Williams' residual functional capacity and not her alleged failure to follow prescribed gastric surgery treatment. In a section of the decision entitled "Findings," the ALJ explained that Williams had a limited RFC and was unable to perform past relevant work.[10] However, the ALJ found that Williams had the "residual functional capacity to perform a significant range of sedentary work."[11] The ALJ then found that "there are a significant number of jobs in the national economy that [Williams] could perform" based on her limitations.[12] This conclusion was consistent with the testimony of the VE.[13] These findings were wholly based upon Williams residual functional capacity and jobs existing in the national economy. Notably, nowhere in the ALJ's findings is an alleged failure to follow prescribed treatment even mentioned or considered. Therefore, Williams claim that the ALJ

---

[10] Tr., p. 22.

[11] Tr., p. 22.

[12] Tr., p. 22.

[13] Tr., p. 263-71.

7

based his decision on her alleged failure to obtain gastric surgery is unsupported and inconsistent with the "Findings" section of the ALJ's decision.

This understanding of the ALJ's rationale is also supported by the body of his decision. In a section entitled "Evaluation of the Evidence," the ALJ summarized the record, provided findings and explained his reasoning. The ALJ characterized Williams limitations as follows:

> Despite her multiple problems, her condition has not deteriorated, but has remained stable. There has been no evidence found of any end organ damage to the eyes, kidneys, heart, or neurological system. She has some decreased range of motion of the lumbar spine, but it is difficult to tell whether it is because of her obesity or whether it is because of disc disease. Nevertheless, on examination, she had no reflex changes and no evidence of any atrophy in the extremities. She demonstrated no evidence of joint deformity, bone or tissue destruction, or loss of motion in the joints. Her weight-bearing status was normal and she was at a full weight-bearing stage. Grip strength and peripheral pulses were normal.[14]

These findings show consideration of Williams' obesity and her RFC. The ALJ further stated that "the state agency medical consultants have determined that although the claimant has a medical condition that causes some limitations, her daily activities are not significantly affected and that the evidence did not show that her ability to perform basic work activities was as limited as she indicated."[15] The ALJ then made a finding as to Williams RFC, ultimately deciding that she was capable of performing limited sedentary work.[16] Once Williams' RFC was assessed, the ALJ referred to the VE's testimony, which established that Williams could perform limited sedentary work in numerous vocations that existed in the national economy.[17] The ALJ then

---

[14] Tr., pp. 19-20.

[15] Tr., p. 20.

[16] Tr., p. 20.

[17] Tr., p. 21.

found that Williams was not "disabled" under the Social Security Act.  Importantly, there is no basis in the body of the ALJ's decision supporting a determination that the ALJ's conclusion was based on Williams failure to follow prescribed treatment.[18]  Accordingly, the Court finds that the ALJ did not base his decision on Williams alleged failure to follow prescribed treatment.

In regards to Williams's second ground, it is also clear that the ALJ properly considered Williams' obesity in light of her other illnesses.  As mentioned above, the ALJ's decision contains a lengthy summary of the record evidence.  During the time span of the medical records described in the ALJ's opinion Williams was struggling with her weight.  Therefore, it is not surprising that the ALJ's description of the record evidence includes information on Williams' obesity and its influence on her other medical conditions.  By describing the record evidence related to Williams' medical history, the ALJ clearly considered the influence of Williams obesity on her other medical conditions.

A review of the ALJ's specific descriptions of the record evidence bolsters this finding and demonstrates that the ALJ's decision was based on substantial record evidence.  At the outset of his Decision, the ALJ mentioned Williams' testimony, which indicated that she suffered from obesity, sleep apnea, diabetes, abscesses and bulging lumbar spine discs.[19]  The

---

[18] The ALJ makes references to gastric surgery in several places in his decision.  Tr., p. 18, 19, 20.  It appears that Williams places emphasis on the following statement by the ALJ: "Gastric surgery has been advised and her condition is expected to greatly improve.  However, there is no indication that this recommendation has been pursued."  Tr., p. 20.  It is clear, however, that this statement is a recitation of the record evidence and not a basis for Williams' denial of benefits.  Additionally, if this was indeed the basis for the ALJ's finding of no "disability," then a discussion of Williams' RFC would have been wholly unnecessary.

[19] Tr., p. 17.

9

description of her testimony further explains that she had trouble engaging in various household conduct, and she knew that "her physical problems center around her weight."[20]

The ALJ next described records from Daniel D. Dugi, M.D., beginning from September 9, 2002.[21] The ALJ described that (1) Williams had been previously treated for obesity, candidal dermatitis and muscle spasms[22]; (2) Williams had para-vertebral muscle spasms; (3) Williams' forward flexion, lateral bending, and ambulatory examination was normal[23]; (4) Williams had obstructive sleep apnea with hyper-somnolence and the use of a C-PAP machine was recommended[24]; and (5) Williams was treated for hidradenitis.[25] The ALJ also indicated that (1) Williams was diagnosed with costochondritis[26]; (2) her "primary problem" was with hidradenitis that caused carbuncles and abcesses[27]; (3) Williams' excessive weight contributed to her other medical problems[28]; (4) various treatments for obesity were attempted, but failed[29]; and (5)

---

[20] Tr., pp. 17-18.

[21] Tr., p. 18.

[22] Tr., p. 182.

[23] Tr., p. 182.

[24] Tr., p. 121.

[25] Tr., p. 180.

[26] Tr., p. 178.

[27] Tr., pp. 174, 176.

[28] Tr., p. 176.

[29] Tr., p. 171, 176.

recommendations for gastric bypass surgery to decrease the risk of diabetes, stroke, and heart attack were made.[30]

The ALJ also considered records related to a psychological evaluation performed on Williams on February 14, 2003 by Psychologist Sean G. Connolly, Ph.D. The ALJ described Dr. Connolly's findings that: (1) Williams admitted to anxiety and stress related to her job, and to occasional anger, but she denied depression[31]; (2) in response to certain questions, Williams indicated that her feelings were fragile, she felt like eating, the worst time in her life was over, a good night's rest motivates her, she functioned best at home and that her greatest concern was her health[32]; and (3) Williams had a verbal IQ of 89, a performance IQ of 89, and a full scale IQ of 88.[33] Dr. Connolly's diagnostic impression was that Williams suffered from anxiety disorder, not otherwise specified, with moderate to severe difficulties in social and occupational functioning.[34]

On October 13, 2003, Williams participated in a consultive internal medicine evaluation by Dr. Joseph M. Long, M.D. The ALJ described Dr. Long's report as follows: (1) Williams' chief complaints involved sleep disorder, diabetes, obesity and back problems[35]; (2) Williams reported three major motor vehicle accidents with back injuries each time, but she had not

---

[30] Tr., p. 171.

[31] Tr., p. 110.

[32] Tr., p. 112.

[33] Tr., p. 112.

[34] Tr., p. 113.

[35] Tr., p. 127.

previously had back surgery[36]; (3) Williams reported no history of depression or psychiatric disorders[37]; (4) on physical examination, Williams was five feet, five inches tall and weighed in excess of 350 pounds; (5) Dr. Long's clinical assessment was obstructive sleep apnea with hyper-somnolence, non-insulin dependant diabetes, morbid obesity and low back pain with degenerative disc disease[38]; and (6) because of her disorders, Williams' ability to sit, stand, move about, lift and carry were severely compromised, however, she could handle objects and hear and speak without difficulty.[39]

The ALJ next described the records of Dr. Michael R. McLeod, M.D. The ALJ stated the following: (1) on initial examination, Williams weighed 377 pounds[40]; (2) Williams' primary diagnosis was obesity with associated diabetes, sleep apnea, multiple infections, and a bulging lumbar disc[41]; (3) when Williams reached the level of obesity that she exhibited at the time, her problems all developed[42]; (4) Williams was an "ideal candidate" for gastric surgery[43]; (5) uncontrolled hypertension, uncontrolled diabetes, renal failure, chronic obstructive pulmonary

---

[36] Tr., p. 127.

[37] Tr., p. 128.

[38] Tr., p. 130.

[39] Tr., p. 130.

[40] Tr., p. 158.

[41] Tr., p. 158.

[42] Tr., p. 156.

[43] Tr., p. 156.

disease and congestive heart failure were ruled out[44]; and (6) Williams' sleep apnea, multiple skin infections, bulging disc disease and emotional stress were related directly to her weight.[45]

The above information, which was cited by the ALJ, clearly supports a finding that Williams obesity and its effects on other illnesses were considered. This evidence also shows that the ALJ's decision was supported by substantial record evidence. Accordingly, the Court finds that the ALJ did not err as to this portion of Williams' claims.

**B.     Failure of the ALJ to Consider any Non-Exertional Limitations Associated With Williams' Severe Impairments**

Williams argues that the ALJ failed to consider any non-exertional limitations associated with Williams' sleep apnea, diabetes, hydradenitis and morbid obesity. Williams emphasizes that the ALJ did not consider certain portions of her testimony indicating that she (1) "drifts off" unexpectedly several times per day; (2) has fatigue, weakness, and chronic lesions which do not heal; (3) has dizziness, nausea and diarrhea due to her medications; and (4) is frequently unable to wear deodorant or undergarments because of her hydradenitis suppurativa. (Dkt. #13-2 at 10-11). Williams argument is without merit.

The ALJ clearly considered Williams' non-exertional limitations when making his finding that Williams was not "disabled" under the Act. The ALJ's decision contains numerous references to medical records which identify and describe Williams' medical conditions and her limitations. *See* Section A, *supra*. After discussing these references, the ALJ stated the following:

---

[44] Tr., p. 156.

[45] Tr., p. 155.

> Despite her multiple problems, her condition has not deteriorated, but has remained stable. There has been no evidence found of any end organ damage to the eyes, kidneys, heart, or neurological system. She has some decreased range of motion of the lumbar spine, but it is difficult to tell whether it is because of her obesity or whether it is because of disc disease. Nevertheless, on examination, she had no reflex changes and no evidence of any atrophy in the extremities. She demonstrated no evidence of joint deformity, bone or tissue destruction, or loss of motion in the joints. Her weight-bearing status was normal and she was at a full weight-bearing stage. Grip strength and peripheral pulses were normal.[46]

These comments described Williams limitations based on record evidence that was complied while Williams was suffering from all of her ailments. Next, the ALJ determined Williams' RFC.[47] The ALJ found that Williams was only capable of sedentary work, the most restrictive exertional level recognized by the Commissioner.[48] Moreover, the ALJ found that Williams had additional non-exertional limitations.[49] Specifically, the ALJ found that Williams needed an opportunity for positional changes, she could only occasionally climb ramps and stairs, stoop, kneel, and crouch and crawl.[50] Furthermore, the ALJ found that Williams could not climb ladders, stairs or scaffolds or work at unprotected heights or around dangerous moving machinery.[51] However, the ALJ found that Williams could work with average stress at an average pace, but that she could not drive as a condition of employment.[52] Many of these points contained in the ALJ's opinion analyze and consider Williams' non-exertional limitations.

---

[46] Tr., pp. 19-20.

[47] Tr., p. 20.

[48] Tr., p. 20.

[49] Tr., p. 20.

[50] Tr., p. 20.

[51] Tr., p. 20.

[52] Tr., p. 20.

Accordingly, In light of the ALJ's rationale highlighted above, the Court finds that the ALJ adequately considered Williams non-exertional limitations.

To the extent that Williams complains that her testimony was not properly considered, her claim is without merit. The law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1981)). However, the ALJ is entitled to make credibility findings regarding a claimant's testimony. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). The ALJ's credibility findings are entitled to great deference. *Id.* An ALJ may discount subjective complaints if they are inconsistent with other evidence in the record. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003).

In his decision, the ALJ stated that after reviewing all of the available medical data, he determined that the medical evidence and the other evidence support a finding that Williams was credible, but not to the extent she alleged. The ALJ apparently based this finding on the following rationale:

> On May 23, 2005 the claimant's weight was 368.6 pounds. This is a significant loss of weight and shows that the claimant can lose weight. A review of her list of medications shows that she is taking medications for her conditions, but she does not take any medications for a mental condition. She takes medications for diabetes and for the sleep disorder and hypersomnolence. She uses creams and uses a desquam wash for infections. She has been treated for back pain with injections and currently takes Ibuprofen and over-the-counter Tylenol as needed. She has not required any back surgery or assistive devices due to a back condition. She does not list medication for hypertension and this is apparently controlled as noted in Dr. McLeod's reports. Despite her multiple problems, her condition has not deteriorated, but has remained stable. There has been no evidence found of any end organ damage to the eyes, kidneys, heart, or neurological system. She has some decreased range of motion of the lumbar spine, but it is difficult to tell whether it is because of her obesity or whether it is because of disc disease. Nevertheless, on examination, she had no reflex changes and no evidence of any atrophy in the extremities. She demonstrated no evidence of joint deformity, bone or tissue destruction, or loss of motion in the joints. Her weight-bearing status was normal and she was at a full

weight-bearing stage. Grip strength and peripheral pulses were normal. Despite the claimant's allegations, the Administrative Law Judge finds that the record evidence fails to support her subjective complaints, including pain, of such severity as to be disabling under the Regulations for determining disability.[53]

These articulated grounds are sufficient to justify a challenge to Williams' credibility. The ALJ indicated that over-the-counter medicines and injections adequately treated Williams' back pain and noted Williams' range of motion, grip strength, pulses, the condition of her extremities and her weight-bearing status. The ALJ also explained that Williams' condition had not deteriorated over time and that she had not been taking any medication for any mental conditions. This evidence is supported by the record. *See* Section A, *supra.* Accordingly, the Court finds that the ALJ did not err when he discounted Williams' subjective complaints.

## Conclusion

For the foregoing reasons, Williams' Motion for Summary Judgment (Dkt. #13) is **DENIED** and the Commissioner's Motion for Summary Judgment (Dkt. #14) is **GRANTED**. The Court shall enter a final judgment on even date herewith.

It is so ORDERED.

Signed this 28th day of September, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

---

[53] Tr., pp. 19-20.